to make these regulations applicable to forest lands wherever situated in this state, and, if its provisions have been violated by the defendant as alleged, the cause of action is properly pleaded.

The interlocutory judgment must be affirmed, with costs. All concur, except HOOKER, J., who dissents.

---

### BROWN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

MASTER AND SERVANT—MASTER'S LIABILITY FOR INJURY TO SERVANT—FELLOW SERVANT—"VICE PRINCIPAL."

Laws 1906, p. 1682, c. 657, known as the "Barnes act," provides that in all actions against a railroad for injuries to an employé from the negligence of such railroad or its officers in addition to the liability now existing by law it shall be held that persons engaged in the service of any railroad, intrusted with the authority of superintendence of other employés, or who have as a part of their duty physical control or direction of the movement of a car, engine, etc., are "vice principals," and not fellow servants of such injured employés. Plaintiff, a brakeman, was directed by his conductor to uncouple a car, and he, not being able to signal directly to the engineer, passed the signal to the conductor, who repeated it to the engineer, but not being able to uncouple the car, was directed by the conductor to pull the pin from another car, which he did, signaling the train to move, and after the cars had separated they were suddenly stopped and pushed back against the other car, catching plaintiff's foot between the bumpers, the backward movement of the cars being in response to a signal by the conductor, of which plaintiff had no intimation. A well-recognized rule in railway service permitted only the trainman who was engaged in uncoupling the cars to give signals for train movements. Held, that plaintiff's injuries were caused by the conductor's negligence in not taking signals from plaintiff, and in himself directing the movement of the car under his general authority, and was the act of a vice principal within the statute, for which defendant was liable.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 7313, 7316, 7827.]

McLennan, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by William Brown against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

A. H. Cowie, for appellant.
James E. Newell, for respondent.

ROBSON, J. Plaintiff, a brakeman in the service of defendant, was at the time of his injury one of a train crew employed in defendant's freight yard at Dewitt. Brownell was the conductor in charge of the crew; and they were under his order and subject to his general control as to the business in which the crew was then employed. The jury has found that plaintiff was injured by reason of the negligence of Brownell in directing the movement of the train in the operation of which the crew was then engaged. Plaintiff based and

tried his action, and has recovered verdict therein, upon the theory that the negligence of Brownell, which caused the injury complained of, was, under the provisions of chapter 657, p. 1682, Laws 1906, known as the "Barnes act," the negligence of a vice principal of defendant, for which under that act defendant is liable.

The sole ground now urged by defendant's counsel as error for which it is claimed the judgment should be reversed is that Brownell's negligent act was done, not in his capacity as vice principal, but while acting simply as a co-employé, or under the immediate direction or control for the time being, of plaintiff himself. In support of this position Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725, and Gallagher v. Newman, 190 N. Y. 444, 83 N. E. 480, are cited. We do not think defendant's position is well founded.

At the time plaintiff was injured he, with the other members of the train crew, was engaged in carrying out the instructions given by defendant's assistant yard master to shift the east 15 cars of a string of 17 from the track on which they were then standing and place them on another track. The locomotive had been attached to the east end of this string of cars, and plaintiff was at the west end of the fifteenth car engaged in an attempt to uncouple it from the sixteenth car, which he had been directed to do by the conductor. Plaintiff made several ineffectual attempts to lift the pin which locked the coupling joining these two cars with the appliance at the end of the fifteenth car; and, as is usual when a pin sticks in this manner, the cars had been moved for short distances east and west on signal given by plaintiff in an attempt to loosen this pin. The position of the cars was such that the plaintiff could not signal the desired movement of the train to the engineman directly, and in passing the signals to the latter the conductor, who was two or three car lengths east of plaintiff and on the same side of the train as he, took them from plaintiff, passed them to another brakeman stationed near the locomotive, who in turn repeated them to the engineman. It appears that there is a well-recognized rule in railway service that when operatives are engaged in making a cut or coupling of cars signals for the movement of the cars are to be given only by the one who is making the cut or coupling; so that at this time no one but plaintiff could properly and safely give such signals, for he was the one in the place of danger. Plaintiff, not being able to lift the pin at the end of the fifteenth car, was directed by the conductor to get up on the car and pull the pin from the end of car 16. Finding the chain connecting the pin with the lever at the end of this latter car broken, he took hold of the broken chain, lifted the pin, and, as the cars separated at his signal, stepped from his position at the end of car 16 to the sill of car 15. The cars separated a few feet, then stopped with a sudden jerk, dislodging plaintiff's foothold on the car, and moving quickly to the west, caught his foot between the bumpers of the cars as cars 15 and 16 came together, causing the injuries for which he has recovered the damages represented in the judgment in this action. The last movement of the train for which plaintiff had given his signal was towards the east, which separated the cars. The abrupt stoppage and change of direction of the moving cars was the result of, and wholly due to, a signal to that effect given by the con-

ductor, of which concededly plaintiff had no knowledge or intimation. Plaintiff's injury was the direct result of giving this last signal.

The provisions of the statute under which plaintiff has recovered his judgment so far as inportant here are as follows:

"In all actions against a railroad corporation * * * for personal injury to * * * any person, while in the employment of such corporation * * * arising from the negligence of such corporation * * . * or of any of its * * * officers or employés, every employé shall have the same rights and remedies for an injury * * * suffered by him, from the act or omission of such corporation * * * or of its * * * officers or employés as are now allowed by law, and in addition to the liability now existing by law, it shall be held in such actions that persons engaged in the service of any railroad corporation, foreign or domestic * * * who are intrusted by such corporation * * * with the authority of superintendence, control or command of other persons in the employment of such corporation * * * or with the authority to direct, or control any other employé in the performance of the duty of such employé, or who have, as a part of their duty, for the time being, physical control or direction of the movement of a signal, switch, locomotive engine, car, train or telegraph office, are vice principals of such corporation * * * and are not fellow servants of such injured * * * employé."

Whether the act of the conductor in giving the last signal for moving the train was within his sphere of action as vice principal, or was a mere negligent performance of a detail of duty devolving upon him while temporarily acting as a subordinate or co-employé of plaintiff, is, as has been said, the sole question presented for our determination. Under the rule for the operation of cars to which reference has already been made, no signal for the movement of the cars at that time should have been given by the conductor except when and as plaintiff directed. If plaintiff had himself given any signal at that time, which Brownell had, either negligently misinterpreted or inaccurately repeated, a different question as to the quality of the negligent act would doubtless be presented, the decision of which may properly abide until it is directly presented for determination; but the signal given by the conductor, Brownell, while it was given for the purpose of directing, and, being obeyed, resulted in, the movement of the train by reason of which plaintiff was injured, was in fact an independent act of Brownell originating in an idea conceived and acted upon by him alone. This much is conceded by Brownell himself. What his particular idea or purpose was is not perhaps clear in view of the facts disclosed by the evidence, nor is its determination now necessary. He had authority to direct plaintiff as well as the other members of the crew in the performance of their duties at that time, which he had exercised just previous to the accident in directing plaintiff to get upon the car and pull the pin. He also, as is conceded, had the general "control or direction of the movement" of the cars. This general control or direction had not departed from him even temporarily while plaintiff was making the cut. His negligence was in not obeying the rule to take signals for the movement of the cars at that time only from the plaintiff, and of his own initiative assuming to exercise his general authority to direct the movement of the cars. It was therefore under the statute

to which we have referred the negligent act of a vice principal for which defendant is liable.

Judgment and order affirmed, with costs. All concur, except Mc-LENNAN, P. J., who dissents.